UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HENRY DUKES,

      *Plaintiff*,

  v.

ROBIN CARNAHAN, Administrator,
United States General Services
Administration,

      *Defendant*.

Civil Action No. 1:24-cv-01826 (CJN)

## ORDER

Henry Dukes, an African American male who worked at the General Services Administration, alleges that his managers engaged in disability discrimination and retaliation in violation of Section 501 of the Rehabilitation Act of 1964, 29 U.S.C § 791, and race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. ECF 7. GSA[1] moves for partial dismissal of Dukes's Amended Complaint on the grounds that one of his claims is untimely, he failed to plead facts that give rise to an inference of race or disability discrimination, and his claims of a hostile work environment are not sufficiently severe nor pervasive. ECF 9. For the reasons that follow, the Court grants GSA's motion.

Dukes alleges that he began to experience discrimination at GSA when Jill Akridge became his supervisor. ECF 7 at 3. He asserts that several actions taken by GSA in 2021 and 2022 amounted to "discrimination and harassment on the bases of race (African-American), color (Black), disability (mental and physical), age (57), and in reprisal for prior protected EEO

---

[1] Dukes sued Robin Carnahan, the then-Administrator of GSA, in her official capacity. ECF 7 at 1.

1

activity."² *Id.* at 4. In particular, Dukes takes issue with GSA for denying his requests for leave and accommodations, issuing of a letter of reprimand and demand to return to work, rating him poorly on his annual performance review, and placing him on a performance improvement plan. *Id.* He eventually contacted an EEO official on September 29, 2021, and filed a formal EEO complaint on December 30, 2021. ECF 9-1 at 2; ECF 9-2 at 2. GSA concluded that Dukes was not subject to discrimination, and the EEOC upheld that decision on appeal. ECF 7 at 5–6.

*Exhaustion*. Federal employees are required to exhaust their administrative remedies before filing a lawsuit. *See* 42 U.S.C. § 2000e-16; *Crawford v. Duke*, 867 F.3d 103, 105 (D.C. Cir. 2017); *Doak v. Johnson*, 798 F.3d 1096, 1104 (D.C. Cir. 2015). To properly exhaust a claim, federal employees must "initiate contact" with an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1).

GSA contends that Dukes failed to abide by the 45-day requirement for his claim that GSA discriminated against him by putting him on a performance improvement plan. ECF 9 at 6. Although Dukes was placed on a performance improvement plan on June 14, 2021, he did not contact an EEO counselor until September 29, 2021—two months after the 45-day deadline had passed.³ ECF 9-1 at 2, 4. Because Dukes waited too long to contact an EEO counselor, the Court dismisses his claim regarding the performance improvement plan.

---

² Dukes makes a passing reference to age discrimination in the factual allegations section of his Amended Complaint. But neither of the counts he raises involves age discrimination, and the Parties accordingly do not address age discrimination in the briefing related to GSA's Partial Motion to Dismiss.

³ Dukes asserts in his response to GSA's Partial Motion to Dismiss that he "disputes that he first made EEO contact on September 29, 2021." ECF 11 at 4. But Dukes does not offer any evidence that he contacted an EEO official earlier, much less provide a specific date for when this alleged initial contact occurred. In addition, "[f]actual allegations in briefs o[r] memoranda of law may not be considered" when resolving a motion to dismiss. *Smith v. United States*, 475 F. Supp. 2d 1, 8 (D.D.C. 2006).

Dukes's attempt to save this claim is unconvincing. He contends that the Court should excuse any tardiness because he explained in his initial EEO contact that "due to [his] stroke/disab[il]ity and other health issues, [he] was not aware of [his] EEO recourse at hand regarding [his] Performance Improvement Plan." ECF 11 at 4. "An employee is entitled to equitable tolling if he demonstrates (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Niskey v. Kelly*, 859 F.3d 1, 7 (D.C. Cir. 2017) (citation and internal quotation marks omitted). Equitable tolling is therefore appropriate "only in extraordinary and carefully circumscribed circumstances." *Norman v. United States*, 467 F.3d 773, 776 (D.C. Cir. 2006) (citation and internal quotation marks omitted). Dukes, as the plaintiff, "bears the burden of pleading and proving in the district court equitable reasons for noncompliance with the [45]-day requirement." *Bayer v. U.S. Dep't of Treasury*, 956 F.2d 330, 333 (D.C. Cir. 1992) (citation and internal quotation marks omitted). Given the cursory and conclusory nature of Dukes's argument—which does not invoke equitable tolling by name, fails to cite any authority in support, and does not explicitly assert that Dukes lacked knowledge of the 45-day deadline— Dukes has not met his high burden.[4] *Contra id.* (allowing equitable tolling where Plaintiff stated "[i]n his affidavit . . . that he was not ever aware or ever notified of the requirement that the EEO Counselor had to be notified within 30 days of a discriminatory act" (citation and internal quotation marks omitted)).

*Race and Disability Discrimination*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[4] Dukes also argues that even if the claim regarding the performance improvement plan "was untimely as a disparate act, it can still be used as part of the hostile work environment claim." ECF 11 at 4. The Court need not and does not address this argument because, for the reasons explained later, Dukes has failed to state a claim for a hostile work environment—even assuming that the performance improvement plan can be considered.

3

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  If a plaintiff "fails to plead sufficient factual matter to state a discrimination claim that is plausible on its face, then the district court should dismiss the case before discovery." *Chambers v. District of Columbia*, 35 F.4th 870, 878 (D.C. Cir. 2022) (en banc) (citation and internal quotation marks omitted).  "Under Title VII . . . and the Rehabilitation Act, the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).

GSA argues that Dukes has failed to state a discrimination claim because "he has not shown a causal connection between his protected status based on disability and race and the alleged adverse actions." ECF 9 at 6–8.  Dukes responds that he has pleaded sufficient facts to survive a motion to dismiss because his Amended Complaint detailed that "he was the only African American male and that he was treated differently because of his race and disability." ECF 11 at 4–5.

With respect to alleged race discrimination, the only allegations in the Amended Complaint that could suggest any causal connection between the alleged adverse employment actions and Dukes's race are that "[t]here were no other African American males, over the age of 50 in this work unit," that "similar requests [for leave] by non-African American employees were granted," and that he was reprimanded in several ways despite similar "actions not [being] taken against his non-African American colleagues in similar situations." ECF 7 at 4, 9–10.  These vague and conclusory statements are insufficient to state a claim.  "Aside from conclusory allegations,

4

[Dukes] offers nothing more to suggest that the alleged adverse employment actions he endured while he was employed by [GSA] were because of his [race]." *Massaquoi v. District of Columbia*, 81 F. Supp. 3d 44, 49 (D.D.C. 2015). Without specific factual allegations suggestive of race discrimination, "it is not reasonable to infer that just because [other employees] were of a different [race] than [Dukes], all disciplinary actions [GSA] took against [Dukes] were motivated by these differences." *Id.* The allegations about unnamed comparator employees with no information about their positions and other relevant characteristics are therefore far too general to "nudge[] [Dukes's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

For many of the same reasons, Dukes has failed to state a claim of disability discrimination. The only allegations in the Amended Complaint that could suggest any causal connection between the alleged adverse employment actions and his disability are that "[o]n multiple occasions, . . . Akridge made derogatory remarks about [his] condition, stating that he was 'just making excuses' and that 'everyone has stress'" and that "Akridge's actions were discriminatory based on [his] disability as she did not subject non-disabled employees to the same treatment." ECF 7 at 7–8. Yet these statements are again far too conclusory. That Dukes's supervisor allegedly criticized him for making excuses does not, without more, make it plausible that GSA took adverse employment actions against him *because of his disability*. And Dukes's statement about unnamed comparators assumes discrimination without alleging any specific facts that would make such an assumption plausible. Because the Amended Complaint merely "tenders 'naked assertions' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678 (alteration adopted) (quoting *Twombly*, 550 U.S. at 557), Dukes's discrimination claims fail.

*Hostile Work Environment*. To prevail on a claim of a hostile work environment, "a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and

5

insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"[5]  *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment" is beyond the purview of Title VII and the Rehabilitation Act.  *Harris*, 510 U.S. at 21.  This inquiry is concerned with "the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance."  *Baloch*, 550 F.3d at 1201.

GSA contends that Dukes has failed to state a claim of a hostile work environment because his allegations are insufficient to plausibly establish that discrimination in the workplace was severe or pervasive.  ECF 9 at 8–10.  Dukes cursorily responds that he "has alleged a viable hostile work environment claim."  ECF 11 at 5–6.

But in his response to GSA's Partial Motion to Dismiss, Dukes does not point to any facts that could plausibly establish a hostile work environment.  *See id.*  And his Amended Complaint lacks "sufficient factual matter, accepted as true, to 'state a claim [of a hostile work environment] that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  That GSA employees took several allegedly adverse employment actions against Dukes, including denying his requests for leave and accommodations and placing him on a performance improvement plan, says nothing about whether "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult"—much less that such discrimination was "severe or pervasive."  *Harris*, 510 U.S. at 21 (citation and internal quotation marks omitted).  The only

---

[5] Courts in this district have applied the same standard for claims of a hostile work environment under Title VII and the Rehabilitation Act.  *See, e.g.*, *Sanders v. Kerry*, 180 F. Supp. 3d 35, 44 (D.D.C. 2016).

allegations in the Amended Complaint that could suggest that a hostile work environment existed are that managers discussed in emails that Dukes may run out of leave and requested that he provide updated medical documentation about his "claimed disability," and that Akridge criticized Dukes for making excuses and dismissed his stress. ECF 7 at 3–4, 6–7. But this alleged conduct is far from severe or pervasive enough to meet the applicable legal standard. *See Baloch*, 550 F.3d at 1201 (concluding that "several verbal clashes with [Plaintiff's] supervisor in the workplace . . . does not rise to the level necessary to support a hostile work environment claim," especially where Plaintiff's "assertion of pervasive and constant abuse is undermined by the sporadic nature of the conflicts"). Moreover, "[i]n the absence of some greater indicator of race or [disability] bias, the uniqueness of plaintiff's race and [disability] in h[is] workplace cannot substantiate a claim that plaintiff's workplace was 'permeated with discriminatory intimidation, ridicule, and insult.'" *Bryant v. Brownlee*, 265 F. Supp. 2d 52, 65 (D.D.C. 2003) (quoting *Harris*, 510 U.S. at 21).

GSA's Partial Motion to Dismiss, ECF 9, is hereby **GRANTED**.

DATE: September 29, 2025

CARL J. NICHOLS
United States District Judge